Harry J. WALTON and Edsel Jerone
Crawl, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–76–510.

Court of Criminal Appeals of Oklahoma.

June 20, 1977.

E. Melvin Porter, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Janet Cox, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The Appellants, Harry J. Walton and Edsel Jerone Crawl, hereinafter referred to as defendant Walton and defendant Crawl, were conjointly charged by Information in the District Court, Jackson County, Case No. CRF–75–115, with the offense of Robbery with Firearms in violation of 21 O.S. 1971, § 801. Following a trial on December 26, 1975, the jury returned a verdict of guilty against both defendants and recommended a sentence of twenty (20) years' imprisonment. Judgments and sentences were imposed on January 9, 1976, for each defendant, from which they have perfected this timely appeal.

At the trial, Patricia Ferrell testified that on July 22, 1975, she was employed at the Jiffy Food Store # 202; that between 2:30 and 3:00 a. m. while she was working in the back of the store she heard the front bell jingle. An armed male with a stocking mask over his face entered the store. He informed her that "it was a hold-up." [Tr. 39] She removed the bills and coins from the cash register and placed them on the counter. He asked her if that was all the money in the store and she replied affirmatively. The man grabbed the money from the counter and went out the front door. A police cruiser arrived approximately three minutes later. She indicated the direction in which the robber fled. She identified defendant Walton as the person who had robbed the store.

Gary Jones testified that he lived in an apartment across the street from the Jiffy Store; that on July 22, 1975, at approximately 3:00 a. m., he observed a dark red maroon car back into a parking area across the street. A subject got out of the car and went down the street. The subject entered the Jiffy Food Store with what appeared to be a gun in his right hand. He called the police. Shortly thereafter the subject came running out of the Jiffy Store, got in the

passenger side of the car and drove away. He observed that a police car was directly behind the maroon automobile.

Officer Bob Lane testified that on July 22, 1975, at approximately 2:45 a. m., he received a radio call concerning the Jiffy Store. Just as he arrived at the store he received another dispatch that the subject had left the store. The clerk in the store motioned him toward an easterly direction. He turned on Thomas Street and received another dispatch that he was behind the suspect. He observed a dark colored reddish-orange Pontiac. He followed the car for several blocks until a back-up unit arrived. He turned on his red lights and stopped the car. He identified defendant Crawl as the driver and defendant Walton as the passenger in the vehicle. He further identified State Exhibits 1 and 3 as weapons which were removed from the vehicle, and Exhibit 2 as $53.00 which defendant Walton removed from his person stating, "Here it is." [Tr. 99]

Officer Eddie Becerra testified that in the early morning hours of July 22, 1975, he assisted Officer Lane in the arrest of the defendants and the search of their vehicle. He further testified that he found State Exhibit 1, a .38 caliber Special Revolver, State Exhibit 3, a .25 caliber automatic, State Exhibit 4, a box of .38 caliber shells and State Exhibit 5, a roll of quarters that he removed from the vehicle.

Officer Ronald Meyers testified that he was riding with Officer Becerra on the morning in question. His testimony did not differ substantially from that of Officer Becerra.

Frank Brady, a polygraph examiner for the Oklahoma State Bureau of Investigation, testified concerning a test administered to defendant Crawl. Defendant Crawl, having previously stipulated with the State that the results of such test would be admissible, testified that in his opinion defendant Crawl attempted deception in response to questions concerning the armed robbery.

For the defense, Officer Bob Lane was re-called and testified that defendant Walton was wearing light green pants when he was arrested. (Witness Patricia Ferrell had previously testified on cross-examination that the robber was wearing light tan or white pants).

Defendants assert, in the first assignment of error, that the trial court abused its discretion in overruling their Motion for Continuance to adequately prepare for trial. The record reflects that defendants orally moved for a continuance on the date of trial, stating that the preliminary hearing transcript had not been completed. The trial court, thereupon, conducted a lengthy inquiry as to whether counsel for defendants were adequately prepared to proceed to trial. The trial court ascertained that twenty-two pages of the preliminary hearing transcript had been furnished to defendant the evening prior to trial; twenty pages had been furnished defendants prior to the selection of the jury; and the final twenty pages would be available at the conclusion of the jury selection. The trial court further ascertained that counsel for defendant Crawl, Mr. Stansel Whiteside, had been present at the preliminary hearing as counsel for both defendants; that Mr. Whiteside had discussed the testimony of the preliminary hearing with defendant Walton's counsel, Mr. Mark Coke, prior to trial. The trial court thereupon took an hour and a half recess, specifically suggesting "that counsel see if they could read the last 20 pages of the transcript." [Tr. 16] The record does not reflect that at the conclusion of the recess either defendant informed the court that they did not have sufficient time to examine the final pages of the transcript.

■ We, thus, conclude that the trial court did not abuse its discretion in denying defendants' Motion for Continuance. We would further observe that the record does not reflect that either counsel was hampered or handicapped by not being furnished a complete transcript until the day of trial in that both extensively cross-examined the State's witnesses at length. See *Kirk v. State*, Okl.Cr., 555 P.2d 85 (1976).

■ Defendants finally contend that the trial court erred in not granting a severance due to the admission of polygraph examination results of one defendant. We first observe that this Court has recently held that due to the potential unreliability of polygraph examinations at this time, that evidence of the results of such examinations is inadmissible even if admitted upon stipulations of all parties. See *Fulton v. State*, Okl.Cr., 541 P.2d 871 (1975). However, in fairness, we should also hasten to point out that this was not the law in Oklahoma at the time of the jury trial in this matter. The *Fulton* case was delivered by this Court in October of 1975; the instant case was tried in September of 1975, prior to the decision in *Fulton*. At the time of the trial of this matter there did, in fact, exist some authority in Oklahoma for admitting the results of a polygraph test if agreed to and stipulated to by both parties. *Castleberry v. State*, Okl.Cr., 522 P.2d 257 (1974) and *Jones v. State*, Okl.Cr., 527 P.2d 169 (1974). Additionally, in *Fulton*, we specifically stated that this holding would apply "in all future cases." It is a general rule of law that decisions of the highest court overruling a prior decision are prospective in application unless specifically declared to have retroactive effect. See *Wrone v. Page*, Okl. Cr., 481 P.2d 479 (1971) and *West v. State*, Okl.Cr. 503 P.2d 221 (1972).

■ Therefore, we are of the opinion that the admission into evidence of the polygraph examination results, when agreed to by stipulation and made a part of the record, was not error in September of 1975. Accordingly, we have examined the stipulation and the testimony of Frank Brady, agent polygraph examiner for the O.S. B.I., and find nothing in such stipulation or testimony admitted against defendant Crawl which inculpated defendant Walton. "The mere fact that all the evidence is not admissible against a co-defendant does not necessitate a severance." *Hinds v. State*, Okl.Cr., 514 P.2d 947, 951 (1973). Under the particular facts of this case, we have held it was not error to admit the polygraph re-

·sults against defendant Crawl; the results are merely not admissible against defendant Walton for lack of relevance.

 Finding no abuse of discretion in denying the requested severance resulting in prejudice to either defendant, we will not reverse the decision of the trial court. See, *Sands v. State*, Okl.Cr., 542 P.2d 209 (1975) and *Hinds v. State*, supra.

In conclusion, we observe the record is free of any error which would cause reversal or justify modification. The judgments and sentences appealed from are accordingly *AFFIRMED*.

BLISS and BRETT, JJ., concur.