2002 OK CR 15

**B.J. BURLESON, Appellant,**

v.

**James SAFFLE and Drew Edmondson, Appellee.**

**No. CQ–2002–140.**

Court of Criminal Appeals of Oklahoma.

March 27, 2002.

*OPINION ANSWERING CERTIFIED QUESTION OF LAW*

CHAPEL, Judge:

¶ 1 The Honorable Carlos F. Lucero, Presiding Judge for a three-judge panel of the United States Court of Appeals for the Tenth Circuit, has certified the following question pursuant to the Revised Uniform Certification of Questions of Law Act:[1]

> On August 1, 1997, the Oklahoma Court of Criminal Appeals held that "where a vehicle is used to facilitate the intentional discharge of a weapon during a single transaction or 'shooting event' only one count of Using a Vehicle to Facilitate the Intentional Discharge of a Firearm [Okla. Stat. Tit. 21, § 652(B) ] is appropriate." *Locke v. State*, 943 P.2d 1090, 1095 (Okla.Crim.App. 1997). Did the statute have the same meaning under Oklahoma law on May 2, 1997, the day petitioner-appellant's criminal conviction for two counts of violating this section was affirmed?

---

1. 20 O.S.Supp.1997, § 1602.

## FACTS

¶2 On February 16, 1995, Burleson and four friends had a dispute with two other men. They arranged to meet the men and fight, but instead drove by their house. Burleson fired approximately five shots at the men from the car; one shot hit and paralyzed one victim. Burleson was convicted of two counts of violating Oklahoma's "drive-by" shooting statute,[2] and received two twenty-five (25) year terms of imprisonment. This Court upheld these convictions and sentences by a May 2, 1997, unpublished summary opinion, and the appeal became final on July 31, 1997.[3] On August 1, 1997, this Court published *Locke v. State*,[4] which held that a defendant could only be charged with one count under § 652(B) where there was one "shooting event". Burleson's subsequent application for post-conviction relief on this issue was denied by the trial court, and this Court affirmed that decision by unpublished opinion on August 3, 1998.[5]

¶3 Burleson's federal petition for writ of habeas corpus was referred to a magistrate judge. The magistrate recommended that the district court deny the petition because (1) the nonretroactivity principle set forth in *Teague v. Lane*[6] barred applying *Locke* to this case; and (2) this Court's decision was not contrary to or an unreasonable application of clearly established federal law. The United States District Court for the Western District of Oklahoma accepted the recommendation, denied habeas relief, and dismissed the action.[7] In its order certifying the question of law stated above, the Tenth Circuit noted the magistrate's recommendation regarding *Teague v. Lane* was in error.[8] *Teague* held that new constitutional rules of criminal procedure will not be retroactively applied unless they (a) place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (b) are watershed rules of criminal procedure "implicat[ing] the fundamental fairness of the trial."[9] As the Tenth Circuit noted, *Locke* and this Court's unpublished opinion in Burleson's case involved a substantive interpretation of a state criminal statute, not a rule of criminal procedure. This Court has adopted *Teague* as it applies to new rules of criminal procedure.[10] The Tenth Circuit commented that this Court's order affirming the denial of post-conviction relief appeared to rely on these cases, and used the *Teague* analysis.[11] This reliance was inappropriate. Burleson claimed, as he does before the federal court, that *Locke* was an intervening change of law from which he should benefit. He admitted that this Court had not declared *Locke* to be retroactive.[12] Under the statute governing Burleson's post-conviction application, he had

---

2. 21 O.S.Supp.1992, § 652(B). The statute was amended in 1997 (specifying the crimes were felonies and removing punishment ranges) and 1999 (restoring punishment ranges). These amendments did not affect the substance of the crime set forth in § 652(B). The 1992 amendment was the law in effect at the time of Burleson's offense.

3. *Burleson v. State*, No. F–96–447 (Okl.Cr. May 2, 1997) (not for publication).

4. 1997 OK CR 43, 943 P.2d 1090, 1095.

5. *Burleson v. State*, No. PC–98–597 (Okl.Cr. August 3, 1998) (not for publication).

6. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

7. *Burleson v. Saffle*, No. CIV–98–1129–L (W. Dist. Okla. June 16, 2000).

8. *Burleson v. Saffle*, 278 F.3d 1136, 1141, (10th Cir.2002).

9. *Teague*, 489 U.S. at 311–312, 109 S.Ct. at 1075–76.

10. *Ferrell v. State*, 1995 OK CR 54, 902 P.2d 1113, 1114 (used *Teague* analysis to find that case which invalidated as unconstitutional a criminal statute was a new rule of criminal procedure not within *Teague* exceptions); *Thomas v. State*, 1994 OK CR 85, 888 P.2d 522, 527, cert. denied, 516 U.S. 840, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995) (cited *Teague* to hold that new rule of criminal procedure, on filing of Bill of Particulars, did not apply to cases pending on collateral review).

11. *Burleson v. Saffle*, 278 F.3d 1136, 1141, n. 5 (10th Cir.2002).

12. *Walton v. State*, 1977 OK CR 208, 565 P.2d 716, 718 (general rule of law that decisions of the highest court overruling a prior decision are prospective in application unless specifically declared to have retroactive effect).

not shown grounds for relief.[13]

## QUESTION ANSWERED

¶ 4 The Tenth Circuit has asked this Court to clarify its interpretation of the statute prohibiting the use of a vehicle to facilitate the discharge of a firearm (drive-by shootings). As the Tenth Circuit notes, this question turns on the intent of the Legislature: whether this statute criminalizes a course of action rather than a discrete act.[14] We affirm our previous conclusion that the Legislature intended to impose an additional punishment on persons who commit drive-by shootings by allowing more than one prosecution where there are multiple victims.

¶ 5 Drive-by shooting, like shooting with intent to kill or assault and battery with a deadly weapon, is indisputably a crime against the person. The Legislature intended to stop people from using vehicles to aid them in shooting other people, and the statute's focus is on behavior which aids the intentional shooting. Crimes against the person are separate and distinct if they are directed at separate victims. "[I]t has long been part of our jurisprudence that, where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons. Temporal and/or spatial proximity or the fact that the weapon used was, or was not, identical, are not material."[15] We have held the double jeopardy clause was implicated where more than one offense occurred during the course of a single transaction.[16] In contrast, Burleson shot from a vehicle at two people several times in rapid succession.

¶ 6 Other jurisdictions, interpreting similar provisions, have reached the same conclusion.[17] As one California appellate court remarked:

> The primary purpose of the proscription against double punishment is to insure that

13. 22 O.S.1991, § 1080. Through a scrivener's error, this Court's Order affirming the denial of post-conviction relief mistakenly cited to 22 O.S. 1991, § 1086.

14. *Burleson v. Saffle*, 278 F.3d 1136, 1143, (10th Cir.2002).

15. *Jennings v. State*, 1973 OK CR 74, 506 P.2d 931, 935 (no double jeopardy violation where defendant was prosecuted for two counts of assault with a dangerous weapon against different victims). *See also Hoffman v. State*, 1980 OK CR 35, 611 P.2d 267, 269–70 (no double jeopardy violation where defendant was prosecuted for murder after acquittal for feloniously pointing a weapon at a police officer in the same transaction); *Clay v. State*, 1979 OK CR 26, 593 P.2d 509, 510 (no double jeopardy violation where defendant was charged with robbery with firearm, kidnapping, and assault while masked and crimes were committed against different victims); *Wilson v. State*, 1973 OK CR 43, 506 P.2d 604, 607 (where defendant was prosecuted for assault and battery with a dangerous weapon and attempted assault and battery with a dangerous weapon, no double jeopardy violation where some elements differed and different victims were involved).

16. *See, e.g., Trim v. State*, 1996 OK CR 1, 909 P.2d 841, 843, *cert. denied*, 519 U.S. 810, 117 S.Ct. 54, 136 L.Ed.2d 17 (1996) (multiple convictions were error where defendant sold three obscene magazines at one time); *Hunnicutt v. State*, 1988 OK CR 91, 755 P.2d 105, 110–111 (two convictions for stolen property in error where defendant bought one sack containing two stolen pistols); *Watkins v. State*, 1992 OK CR 34, 855 P.2d 141, 142 (two convictions for possession of controlled substances with intent to distribute were error where two types of drugs were shipped in single package).

17. *State v. Ferreira*, 69 Wash.App. 465, 850 P.2d 541, 544 (1993) (persons committing act of violence intending to place more than one person in fear may be convicted of multiple offenses under the same statute, and defendant committed five acts of second degree assault which requires a specific intent to create apprehension or fear); *People v. Williams*, 14 Cal.App.4th 601, 17 Cal. Rptr.2d 583 (1993) (defendant subject to multiple sentence enhancement for committing an act of violence intending to harm more than one person, or likely to harm several persons, and defendant was convicted of two counts of attempted murder by discharging a firearm from a vehicle); *Vigil v. State*, 563 P.2d 1344, 1350–54 (Wyo. 1977) (person committing act of violence intending to place more than one person in fear may be convicted of multiple offenses, and defendant gets no bargain rate for shooting five persons in a car); *People v. Wieckert*, 191 Colo. 511, 554 P.2d 688, 690 (1976) *overruled in part on other grounds by Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978) (defendant committing act of violence intending to place more than one person in fear may be convicted of multiple offenses under the same statute, and defendant shot four times at a car where several officers, his wife and daughter stood).

the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.[18]

¶ 7 The drive-by shooting statutes require the specific intent to discharge a weapon in conscious disregard for the safety of another person or persons.[19] To determine the Legislature's intentions, we interpret this provision in the context of the entire statute. The drive-by provision is contained within Section 652, which also prohibits shooting with intent to kill and assault with a deadly weapon.[20] The offense of shooting with intent to kill explicitly requires the intent to kill any person. Assault and battery with a deadly weapon, as set forth in this statute, does not explicitly require an intent to injure or kill if the weapon or force used is likely to produce death. Turning to the criminal statutes prohibiting similar behavior, simple assault requires a willful attempt to injure another;[21] simple battery requires only the willful use of force with no intent to injure;[22] and assault and battery with a dangerous weapon requires intent to do bodily harm.[23] Taking this category of crimes as a whole, it is clear the Legislature intended to punish willful use of force or violence against another whether or not a defendant has the specific intent to injure or kill. The phrase "person or persons" does not indicate that use of one vehicle to shoot several persons constitutes a single event. Rather, it indicates the Legislature's recognition that drive-by shootings often involve more than one victim—that is, constitute a crime against more than one person.

¶ 8 THEREFORE, we find that the Legislature intended to allow multiple counts for the offense of use of a vehicle to facilitate the intentional discharge of a weapon, where multiple victims are involved.[24] We now turn to the question posed by the Tenth Circuit. In light of our interpretation of the drive-by shooting statute, we find that *Locke* was wrongly decided and must be overruled. The statute's meaning is the same as it was on May 2, 1997, when Burleson's convictions were affirmed.

JOHNSON, V.P.J., and LILE, J., concur.

LUMPKIN, P.J., and STRUBHAR, J., dissent.

LUMPKIN, Presiding Judge: dissents.

¶ 1 I dissent to the Court's decision that 21 O.S.Supp.1997, § 652(B) allows for multiple prosecutions. As I stated in my separate vote to *Locke v. State*, 943 P.2d 1090 (Okl.Cr. 1997):

I concur in the results reached by the Court in this case. However, I do so based on an application of the statutory language contained in 21 O.S.Supp.1992, § 652(B). As the opinion notes "[t]his statute is limited by the act of using a vehicle to facilitate the intentional discharge of a firearm in a reckless manner". The focus of subsection B is on the use of a vehicle regardless of the number of persons whose safety was disregarded in the discharge of a weapon from the vehicle. Subsections A and B of Section 652 focus on the prohibited acts being committed on "another", *i.e.* the specific intent analysis in the Court's opinion. For that reason, separate charges may be filed and convictions affirmed under Subsection A and C for each individual victim of the prohibited act. However, the operative language of Subsection B is the use of the vehicle to facilitate the intentional discharge of a weapon in conscious disregard for the safe-

18. *People v. Alvarez*, 9 Cal.App.4th 121, 11 Cal. Rptr.2d 463, 467 (1992) (citation omitted).

19. 21 O.S.Supp.1992, § 652(B) (prohibiting the use of "any vehicle to facilitate the intentional discharge of any kind of firearm, crossbow or other weapon in conscious disregard for the safety of any other person or persons").

20. 21 O.S.Supp.1999, §§ 652(A), (C).

21. 21 O.S.1991, § 641.

22. 21 O.S.1991, § 642.

23. 21 O.S.Supp.1999, § 645.

24. Burleson's request for briefing and oral argument, filed February 13, 2002, is **DENIED.**

ty of any other person or persons. Applying the plain language of the statute, only one conviction can be sustained for the use of the vehicle at that particular place at the same time. That is not to say a single charge under Subsection B could not be joined with multiple counts under other statutory provisions which provide for separate offenses when separate victims are involved.

943 P.2d at 1097.

¶2 *Locke* is the only published case addressing the issue of multiple prosecutions under § 652(B). Therefore, it is the only decision binding on this Court. *See* Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal* Appeals, Title 22, Ch.18, App. (1999). In determining that *Locke* was wrongly decided, the Court is ignoring established precedent in order to achieve a desired result in a particular case.

¶3 However, I recognize the decision in *Locke* was not specifically declared to be retroactive. Therefore, it cannot be applied to Appellant's case which was decided before *Locke*.